THE CUDAHY PACKING COMPANY, Appellant, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, June 11, 1917.

1. **CARRIERS: Interstate Commerce Shipment: Bill of Lading: Necessity for.** Whether the issuance of a bill of lading to the shipper by an interstate carrier is necessary to an action under the Carmack amendment to the Interstate Commerce statute, *quaere.* A remedy under that statute has been allowed in several States when no bill was issued.

2. ———: **Pleading: Bill of Lading: Proof: Presumption.** Where a shipper plaintiff alleged in his petition for damages against the initial carrier under an interstate shipment, that the carrier issued to him a bill of lading and that he was the legal holder thereof, and this is denied in defendant's answer, the shipper must prove it or fail in his action. And a presumption that since the statute requires the carrier to issue a bill, it did so, will not supply the place of such proof.

3. **INTERSTATE CARRIER: Presumption: Pleading.** An inter-
state carrier is entitled to a presumption that its business is
being carried on in a lawful way, but that presumption cannot be
substituted for proof where the shipper alleges in his petition that
a bill of lading was issued to him by the carrier.

4. ———: **Evidence: Concealment: Presumption.** Where a plaintiff
shipper has evidence of the fact, i. e., has possession of a bill of
lading which he pleaded was issued and delivered to him by the
carrier, he cannot hold back the bill of lading and rely on the
presumption that the carrier complied with the statute directing
bills of lading to be issued.

5. ———: ———: **Possession: Presumption.** When a party plaintiff is
in possession of evidence of the fact, he cannot refuse to produce it
and invoke a presumption as a substitute for such fact.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

AFFIRMED.

*New, Miller, Camack & Winger* for appellant.

*Sebree, Conrad & Wendorff* for respondent.

ELLISON, P. J.—Plaintiff is a meat packing
establishment and defendant an interstate carrier. The
former made two shipments of meat over defendant's
road, as the initial carrier, from Sioux City, Iowa, one
to New York and the other to Massachusetts. Each
arrived at destination over connecting carriers, in a
damaged condition and this action was instituted under
the interstate commerce law, resulting in a verdict for
plaintiff, which the court set aside and granted a new
trial. Plaintiff appealed from that order.

The petition is in two counts, one for each shipment,
and in each count it is alleged that defendant issued a
bill of lading evidencing the contract of carriage and
that plaintiff was the legal owner and holder of such bills.
The reason for granting a new trial is stated, in the
order, to be that there was no evidence that bills of lading
were issued.

196 M. A.—3

Plaintiff concedes the fact to be as stated by the court, but insists that a bill of lading was not necessary to maintaining the cause of action alleged. That part of the Carmack amendment to the Interstate Act, applicable (sec. 20) reads as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." It must be conceded that the words used in this section are of a mandatory character, and defendant contends that they are emphasized by the language used in decisions of the Supreme Court of the United States, especially Adams Express Co. v. Croninger, 226 U. S. 491. At page 504 of the opinion in that case, it is said that one of the "dominating features of that amendment" is that "It affirmatively requires the initial carrier to issue 'a receipt or bill of lading' when it receives 'property for transportation from a point in one State to a point in another.'" At page 505 is found the expression that "It (the Carmack amendment) embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract." At page 506, it is said, "The duty to issue a bill of lading and the liability thereby assumed are covered in full," etc. And at page 507, in speaking of the proviso clause of the section which continues existing remedies and rights of action, whether under State statutes or the common law, limits such remedies and rights, thus continued, to such as are not inconsistent

with the provisions of the act. To this may be added the recent case of Pennsylvania R. R. Co. v. Olivit Bros., decided by that court April 30, 1917.

If verbal contracts for interstate shipments may be made and enforced under the interstate law, will not uniformity cease? And will not full room be left for discrimination and thus the principal feature of the statute be destroyed? If a shipper desires the remedy and the protection provided by that statute should he not demand a bill of lading?

However, it has been ruled by several State courts, in line with plaintiff's suggestion, that the issuance of a bill of lading is "a mere detail requirement," and is not necessary to interstate shipments and liability under the interstate law. [Aton Piano Company v. Railroad, 152 Wisconsin, 156; Gamble-Robinson Company v. Union Pacific Railroad Company, 262 Illinois 400, 405; International Watch Company v. Delaware, Lackawanna & W. Railroad Company, 80 New Jersey Law, 553, 556.]

But those cases are not like the one before us. Neither of them purports to have been instituted and based on a bill of lading, while in the present case, as we stated at the beginning, the action, as disclosed by the petition, is founded on a bill of lading issued and delivered to plaintiff.

We are not put to the necessity of deciding this question in this case, since plaintiff has chosen to found his action on the issuance of a bill of lading. Having stated that character of action, it is necessary to prove it. For a party cannot sue on one cause of action and recover upon another even though they relate to the same subject-matter. [Cole v. Armour, 154 Mo. 333, 351; Huston v. Tyler, 140 Mo. 252; Ingwerson v. Railroad, 205 Mo. 328, 335; Koons v. St. Louis Car Company, 203 Mo. 227, 254; Roaring Fork Potato Growers Ass'n v. Clemons Produce Company, 193 Mo. App. 653, 657, 658.]

But plaintiff seeks to avoid this fundamental rule by the claim that the action was not founded on the bill of lading. But manifestly it is. The petition states that for "the consideration of certain charges to be paid

to defendant" it agreed to transport and deliver; and then sets up the bill of lading. [Meade v. Railroad, 183 Mo. App. 353; Laming Mfg. Co. v. Railroad, 182 S. W. 181.]

But plaintiff has endeavored to excuse itself from proof by invoking a presumption, i. e., that since the interstate statute directs that a bill of lading shall be issued by the initial carrier, it will be presumed that it did its duty and one was issued. The following cases on presumptions are cited in support of this. [Cinn. & Tex. Pac. Ry. Co. v. Rankin, 241 U. S. 319, 327; Bank of U. S. v. Dandridge, 12 Wheat, 64, 69-70; Knox Co. v. Ninth Nat. Bank, 147 U. S. 91, 97; Maricopa & Phoenix R. R. v. Arizona, 156 U. S. 347, 351; Sun Pub. Co. v. Moore, 183 U. S. 642, 649.]

We think those cases are not applicable. The first is the only one specially referred to. There defendant railroad pleaded it had duly filed its schedule of rates, etc., and the State trial court (p. 323) said that it had no doubt that where the railroad defendant charged with a violation of the Interstate Commerce Law a presumption in favor of its compliance would arise, but as the railroad pleaded its compliance as a matter of defense, no presumption would arise in its behalf and it should prove it. The Court of Civil Appeals of Tennessee (approved by the Supreme Court) in affirming the trial court said (p. 324) that: "It hardly appears debateable to us, that it was incumbent upon the railroad company, in this case, in the present state of the pleadings, to show by proof that it had met the requirements of the Interstate Commerce Act, and this burden it failed to carry, and having failed to do so it cannot rely upon presumption." In reference to this, the Supreme Court of the United States refused to consider whether the question was controlled by the pleadings, Mr. Justice McREYNOLDS saying (p. 326): "The State courts, treating the bill of lading as properly in evidence, undertook to determine its validity and effect. We need not, therefore, consider the motted questions of pleading. The shipment being interstate, rights and liabilities of the parties depend

upon acts of Congress, the bill of lading, and common-law rules as accepted and applied in Federal tribunals."

As stated in New York Central & Hudson R. R. Co. v. Beaham, 37 S. C. Rep. 43, an interstate carrier is entitled to a presumption that "its business is being carried on lawfully." But that, and like holdings, do not touch the question before us. Here the plaintiff has affirmatively alleged, as the matter upon which its cause of action is based, that a bill of lading was issued for the meat and delivered to it; and this was denied by the answer. In such circumstances it cannot substitute a presumption for proof.

There is another reason why plaintiff should not be allowed a presumption and that is, it had the proof in hand and had no necessity for invoking substitutionary matter. A presumption is not the best evidence, it may not be true as a matter of fact. It is but a substitute for lack of anything better. It should not be indulged when evidence of the matter presumed is at hand. [1 Greenleaf on Ev., sec. 82.] If a litigant tenders an affirmative issue as his cause of action and has the proof in his pocket, may he suppress it, remain silent and depend upon a presumption? The courts in this State have answered that in the negative. [Fifth Third Nat'l Bank v. McCrory, 191 Mo. App. 295, 297, 298; Mockowick v. Railroad, 196 Mo. 550, 571.] In the latter case the Supreme Court said that the plaintiff of all men, knew what the facts were, and, having declined to speak, he should not be allowed to invoke the aid of a friendly presumption. In Erhart v. Dietrich, 118 Mo. 418, 427, it is said that "Presumptions serve a most useful and indispensable part in the correct decision of many questions, but they are out of place, *when the facts are known or are admitted.*" (Italics not ours). And we may add to this; that when the facts are known to the party invoking the presumption and concealed by him, or he refuses to state them, he should not only not have the benefit of the presumption he invokes, but a presumption should come against him, that if he disclosed the facts they would be contrary to his claim. "It is certainly a maxim," said

Lord MANSFIELD in Blatch v. Archer, 1 Cowp. 63, "that all evidence is to be weighed according to the proof, which it was in the power of one side to have produced, and in the power of the other to have contradicted." To the same effect is McDonough v. O'Neil, 113 Mass. 92, 96, and Lawson's Presumptive Evidence, sec. 153.

From these considerations it is our opinion that plaintiff should have proven issuance to it of bills of lading for the shipments and that the trial court did not err in granting a new trial; All concur.